# 24-1869

## United States Court of Appeals for the First Circuit

KEVIN BROWN, individually and as natural parent and next friend of G.B. and D.B.; CHRISTOPHER BLUNDON, individually and as natural parent and next friend of A.B. and Z.B.; THERESA BROWN, individually and as natural parent and next friend of G.B. and D.B.; KIMBERLY PEICKER, individually and as natural parent and next friend of M.P. and A.P.; MARK PEICKER, individually and as natural parent and next friend of M.P. and A.P.; CORRIN WILSON, individually and as natural parent and next friend of K.H., L.H. and R.H.; BRIAN HARRIS, individually and as natural parent and next friend of K.H., L.H. and R.H.; OLEG GOLTSOV, individually and as natural parent and next friend of J.G.,

*Plaintiffs-Appellees*,

ADAM W. DYER; BRIAN MENDEZ, individually and as natural parent and personal representative for M.M.; BRENDA MORSE; JAMES BOLLENGIER; JEAN DOWLING; AMY MENDEZ, individually and as natural parent and personal representative for M.M.; BEVERLY VOLNER; JAMES VOLNER; DAWNA WORCESTER; RICHARD SLIDE, individually and as natural parent and personal representative for C.S. and M.S.; ERIN SLIDE, individually and as natural parent and personal representative for C.S. and M.S.; JONATHAN KILEY, individually and as natural parent and personal representative for A.K., K.K., E.K. 1, E.K. 2; JENNIFER KILEY; APRIL PROVENCHER; PHYLLIS PROVENCHER; RICHARD PROVENCHER; DARLENE DEBLOIS; DARLENE E. DEBLOIS LIVING TRUST; DAVID TRUE; BRIDGET HEARD,

*Plaintiffs*,

-versus-

SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION; GWENAEL BUSNEL,

*Defendants-Appellants*,

JOHN DOES 1-5,

*Defendant.*

_____

Interlocutory Appeal of an Order of the United States District Court for the District of New Hampshire (Laplante, J.), Case No. 1:16-cv-00242

_____

# BRIEF FOR THE PLAINTIFFS-APPELLEES

_____

Kevin S. Hannon (1177677)
SINGLETON SCHREIBER, LLP
1641 N. Downing Street
Denver, CO 80218
(720) 704-6028

Morgan A. Hollis (1041492)
GOTTESMAN & HOLLIS P.A.
39 East Pearl Street
Nashua, NH 03060
(603) 889-5959

John A. Yanchunis (1133910)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505

*Attorneys for Plaintiffs-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iv

REASONS WHY ORAL ARGUMENT SHOULD BE HEARD ................ 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE .................................................................. 1

SUMMARY OF THE ARGUMENT ........................................................ 4

STANDARD OF REVIEW ..................................................................... 10

ARGUMENT ......................................................................................... 10

I.  THE DISTRICT COURT PROPERLY EXERCISED ITS
    DISCRETION WHEN IT CERTIFIED A LIABILITY CLASS
    WITH RESPECT TO PLAINTIFFS' TRESPASS, NEGLIGENCE,
    AND NEGLIGENT FAILURE TO WARN CLAIMS .................... 10

   A.  The Certification Order is Amply Supported by the Facts of
       this Case and a Rigorous Analysis of Commonality, and
       Predominance and Superiority ................................................ 11

      1.  The Court Rigorously Analyzed the Facts and Probed Behind
          the Pleadings ........................................................................ 12

      2.  The Court Properly Found that the Commonality Requirement
          is Satisfied ............................................................................ 20

      3.  The Court Properly Determined that a Liability Class with
          Respect to the Trespass, Negligence, and Negligent Failure to

i

Warn Claims under Rule 23(b)(3) Presents Predominant and Common Issues .......................................................................23

a. The Court Properly Certified Plaintiffs' Trespass Claim Pursuant to the Rule 23(b)(3) Predominance Standard.......24

b. The Court Properly Certified Plaintiffs' Negligence and Negligent Failure to Warn Claims Pursuant to the Rule 23(b)(3) Predominance Standard ..........................................26

c. The Court Properly Considered and Found Rule 23(b)(3) Superiority.............................................................................30

B. Property Damage Claims Have Been Repeatedly Certified, Upheld, And Denied Review......................................................36

C. Defendants' Attempt to Impeach the District Court's Certification of a Liability Class By Speculation of Localized Other Sources Fails to Defeat the Court's Predominance Conclusions ...............................................................................42

D. Rule 23(b)(3) Allowed the Court in its Discretion to Maintain the Class Action by Certifying a Liability Class and Bifurcating Damages from Liability .......................................49

E. Certification of a Liability Class Did Not Violate Defendants' Rights Under Rule 7 or the Due Process Clause ....................52

F. Bifurcation Creates No Violation of Defendants' Seventh Amendment Rights................................................................55

II.    THE RULE 23(c)(4) ISSUE THAT DEFENDANTS CLAIM JUSTIFIES REVIEW BY THIS COURT DOES NOT EXIST ....................................................................... 59

III.   THE DISTRICT COURT SATISFIED RULE 23(c)(1)(B)'S TEXT AND PURPOSE ........................................................... 61

CONCLUSION ...................................................................... 66

CERTIFICATE OF COMPLIANCE ........................................ 68

CERTIFICATE OF SERVICE ................................................ 69

ADDENDUM ......................................................................... 70

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aetna Casualty Surety Co. v. P & B Autobody*,
  43 F.3d 1546 (1st Cir. 1994) ........................................................... 55

*Allison v. Citgo Petroleum Corp.*,
  151 F.3d 402, 422 (5th Cir. 1998) ..................................................... 60

*Andrews v. Plains All Am. Pipeline, L.P.*,
  No. CV 15-4113, 2018 WL 2717833 (C.D. Cal. Apr. 17, 2018) ........ 38

*Baker v. Saint-Gobain Performance Plastics Corp.*,
  632 F. Supp. 3d 19 (N.D.N.Y. Sept. 30, 2022) .............................. 2, 37

*Baker v. Saint-Gobain Performance Plastics Corp.*,
  No. 16-cv-0917, 2023 WL 2388727 (N.D.N.Y. Mar. 7, 2023) ............. 2

*Bell v. WestRock CP, LLC*,
  No. 17-cv-829; 2019 WL 1874694 (E.D. Va. Apr. 26, 2019) ............. 38

*Bentley v. Honeywell Int'l, Inc.*,
  223 F.R.D. 471 (S.D. Ohio Sept. 23, 2004) ....................................... 33

*Black v. Occidental Petroleum Corp.*,
  69 F.4th 1161, 1190 (10th Cir. 2023) ............................................... 39

*Boughton v. Cotter Corp*,
  65 F.3d 823 (10th Cir. 1995) ........................................................... 41

*Brown v. City of Detroit*,
  No. 10-cv-12162; 2014 WL 7074259 (E.D. Mich. Dec. 12, 2014) ..... 40

*Bruzek v. Husky Oil Operations Ltd.*,
  520 F.Supp.3d 1079 (W.D. Wis. Feb. 19, 2021) .......................... 33, 39

*Carignan v. N.H. Int'l Speedway*,
858 A.2d 536 (N.H. 2004) ................................................................ 44

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ............................................................. 60

*Cook v. Rockwell Int'l Corp.*,
151 F.R.D. 378 (D. Colo. Oct. 8, 1993) ........................................... 51

*Crutchfield v. Sewer and Water Board of New Orleans*,
829 F.3d 370 (5th Cir. 2016) ............................................................ 41

*DaSilva v. Border Transfer of MA, Inc.*,
296 F.Supp.3d 389 (D. Mass. Nov. 9, 2017) ................................... 40

*DeBenedetto v. CLD Consulting Engineers, Inc.*,
903 A.2d 969 (N.H. 2006) ................................................................ 44

*Doe v. Guardian Life Ins. Co. of Am.*,
145 F.R.D. 466 (N.D. Ill. 1992) ....................................................... 54

*Ebert v. General Mills, Inc.*,
823 F.3d 472 (8th Cir. 2016) ............................................................ 41

*Gates v. Rohm & Haas Co.*,
265 F.R.D. 208 (E.D. Pa. 2010) ....................................................... 57

*Gates v. Rohm and Haas*,
655 F.3d 255 (3d Cir. 2011) ....................................................... 41, 57

*Gintis v. Bouchard Transp. Co.*,
596 F.3d 64 (1st Cir. 2010) ........................................................ 31, 36

*Greene v. Will*,
No. 09-cv-510; 2013 WL 12309515 (N.D. Ind. Jan. 29, 2013) .......... 38

*Harris v. Medical Transportation Management, Inc.*,
    2022 WL 3041189 (D.C. Cir. Aug. 1, 2022) ................................. 6, 60

*Hydrite Chemical Co. v. Calumet Lubricants Co.*,
    47 F.3d 887 (7th Cir. 1995) ............................................................. 50

*In re Copley Pharm., Inc.*,
    158 F.R.D. 485 (D. Wyo. 1994) ...................................................... 54

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ..................................................... 39, 60

*In re Flint Water Cases*,
    558 F.Supp.3d 521 (E.D. Mich. 2021) ...................................... 54, 55

*In re Initial Pub. Offerings Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) .............................................................. 35

*In re McKesson Governmental Entities Average Wholesale Price
    Litig.*, 767 F.Supp.2d 263 (D. Mass. Mar. 4, 2011) ........................ 40

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
    241 F.R.D. 435 (S.D.N.Y. Jan. 3, 2007) ......................................... 36

*In re Motor Fuel Temperature Sales Practices Litigation*,
    292 F.R.D. 652 (D. Kan. Apr. 5, 2013) ........................................... 40

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
    522 F.3d 6 (1st Cir. 2008) .......................................................... 10, 20

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
    712 F.3d 21 (1st Cir. 2013) ............................................................ 44

*In re Nexium Antitrust Litigation*,
    777 F.3d 9 (1st Cir. 2015) ............................................. 18, 34, 47, 50

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ............................................................ 61

*In re Prograf Antitrust Litig.*,
No. 11-md-02242, 2014 WL 4745954
(D. Mass. June 10, 2014) .......................................................... 40, 55

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001) ............................................................ 35

*In re Whirlpool Corp. Front-Loading Washer Products Liability
Litigation*, 722 F.3d 838 (6th Cir. 2013) ......................................... 40

*Jacob v. Duane Reade, Inc.*,
293 F.R.D. 578 (S.D.N.Y. Aug. 8, 2013) .......................................... 40

*Jenkins v. United Gas Corp.*,
400 F.2d 28 (5th Cir. 1968) ............................................................ 54

*Kierstead v. Betley Chevrolet-Buick, Inc.*,
389 A.2d 429 (N.H. 1978) ............................................................... 43

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ....................................................... 35

*Lund v. Henderson*,
807 F.3d 6 (1st Cir. 2015) ............................................................... 51

*Marrero-Rolon v. Puerto Rico Elec. Power Auth.*,
No. CV-15-1167, 2018 WL 4740202 (D.P.R. Sept. 30, 2018) ........... 40

*Martin v. Behr Dayton Thermal Prod. LLC*,
896 F.3d 405 (6th Cir. 2018) ..................................................... 22, 60

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ..................................................... 50, 57

*McHugh v. Madison-Kipp Corp.*,
No. 11-CV-724, 2012 WL 12996281 (W.D. Wis. May 3, 2012) ......... 56

*Mejdrech v. Met-Coil Sys. Corp.*,
319 F.3d 910 (7th Cir. 2003).........................................32, 51

*Mejdreck v. Lockformer Co.*,
01 C 6107, 2002 WL 1838141 (N.D. Ill. Aug. 12, 2002)........................51

*Muñiz v. Rovira*,
373 F.3d 1 (1st Cir. 2004) ..........................................53

*Navelski v. Int'l Paper Co.*,
244 F.Supp.3d 1275 (N.D. Fla. Feb. 24, 2017) ..................................39

*Navelski v. Int'l Paper Co.*,
261 F.Supp.3d 1212 (N.D. Fla. May 21, 2017)..........................55, 56

*Nix v. Chemours Co. FC*,
No. 17-cv-189, 2023 WL 6471690 (E.D.N.C. Oct. 4, 2023) .............38

*Olden v. LaFarge Corp.*,
383 F.3d 495 (6th Cir. 2004)........................................55, 55

*Parko v. Shell Oil Co.*,
739 F.3d 1083 (7th Cir. 2014)........................................41

*Prantil v. Arkema, Inc.*,
986 F.3d 570 (5th Cir. 2021)........................................41

*Rio Mar Assocs., LP, SE v. UHS of Puerto Rico, Inc.*,
522 F.3d 159 (1st Cir. 2008) ..........................................51

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F.Supp.3d 182 (D.R.I. May 18, 2021) .......32, 32

*State v. Exxon Mobil Corp.*,
126 A.3d 266 (N.H. 2019) ..........................................44

*Stender v. Archstone-Smith Operating Trust*,
No. 07-cv-02503; 2015 WL 5675304 (D. Colo. Sept. 28, 2015).........40

*Stepp v. Monsanto Research Corp.*,
No. 91-cv-468; 2012 WL 604328 (S.D. Ohio Feb. 24, 2012) ............. 39

*Sterling v. Velsicol Chemical Corp.*,
855 F.2d 1188 (6th Cir. 1988) .......................................................... 51

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
No. 16-cv-125, 2019 WL 8272995 (D. Vt. Aug. 23, 2019) ....... 3, 37, 37

*Tarrify Properties v. Cuyahoga County*,
37 F.4th 1101 (6th Cir. 2022) .................................................... 42, 57

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .................................................................... 30, 30

*Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*,
453 F.3d 179 (3d Cir. 2006) .............................................................. 65

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................. 20, 38, 48

*Waste Management Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000) ................................................ 10, 42, 47

*Yaffe v. Powers*,
454 F.2d 1362 (1st Cir. 1972) .......................................................... 35

## RULES

Fed. R. Civ. P. 4 ....................................................................... 49

Fed. R. Civ. P. 7 ....................................................................... 52, 53, 55

Fed. R. Civ. P. 23 ......................................................... *passim*

Fed. R. Civ. P. 42 ..................................................................... 49

Fed. R. Evid. 702 ............................................... 3, 8, 14, 24, 59

## TREATISES

2 Newberg and Rubenstein on Class Actions § 4:72 (6th ed.)...............31

2 Newberg and Rubenstein on Class Actions § 4:91 (6th ed.)...............55

2 Newberg and Rubenstein on Class Actions § 4:80 (6th ed.) ..............58

2 Newberg and Rubenstein on Class Actions § 7:26 (6th ed.) ..............61

4 Newberg and Rubenstein on Class Actions § 11:1 (6th ed.)...............49

4 Newberg and Rubenstein on Class Actions § 11:5 (6th ed.).......... 49, 50

5 Moore's Federal Practice – Civil § 23.45.............................38

Manual for Complex Litigation (Fourth) § 21.24 (4th ed.)....................49

Manual for Complex Litigation (Fourth) § 22.755 (4th ed.)..................55

## OTHER

*Amici* Brief of R. H. Klonoff, E. J. Cabraser, and S. Issacharoff as to Rule 23(c)(4) Standard, *Harris v. Medical Transportation Management, Inc.*, No. 22-7033, 2022 WL 3041189 (D.C. Cir. Aug. 1, 2022)............................................................60

N.H. Civil Jury Instructions, § 6.1 (2020-2021 ed.)..........................44, 56

N.H. Civil Jury Instructions, § 7.1 (2020-2021 ed.)...............................44

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Oral argument would significantly aid this Court in better understanding the district court's certification order in light of the facts of the case.

## STATEMENT OF THE ISSUES

1.     Whether the district court abused its discretion in certifying a Rule 23(b)(3) liability class with respect to Plaintiffs' trespass, negligence, and negligent failure to warn claims, resulting in bifurcated liability and damages phases of the case.

2.     Whether the district court's certification order violated Rule 23(c)(1)(B).

## STATEMENT OF THE CASE

Plaintiffs filed this case on behalf of property owners in narrowly defined geographic areas (A11-12; PSA1-6)[1] whose property and household water sources were contaminated by emissions of toxic PFOA from Defendant Saint-Gobain Performance Plastics Corporation's ("Saint-Gobain") manufacturing facility.  A1, 5-9, 13-19.  Plaintiffs assert claims of trespass, nuisance, negligence, and negligent failure to warn

_____

[1] "PSA" refers to Plaintiffs' Supplemental Addendum which is attached to this Brief.

1

against Saint-Gobain and its facility's manager, Defendant Gwenael Busnel. A1, 10.

Operational data provided by Saint-Gobain shows that it and its predecessor released hundreds of pounds of toxic PFOA into the ambient air each year from 1986 through 2014. A8. In particular, even though its knowledge of the contamination risks from its emissions did not vary since at least 2003, Saint-Gobain continued to emit hundreds of pounds of PFOA through 2006, and did not notify the NHDES of its contamination until 2016. A42. A consultant hired by Saint-Gobain was able to successfully model the pattern of present contamination in soil and groundwater based on emissions data from Saint-Gobain. A9.

Defendants admit that at issue here is their liability for contaminating over 10,000 properties. OB26. This is the third Saint-Gobain facility subject to class action litigation arising from PFOA emissions. In two other cases, different district courts certified claims including for liability, and, in both instances, the Second Circuit denied Rule 23(f) review.[2]

---

[2] *See Baker v. Saint-Gobain Performance Plastics Corp.*, 632 F.Supp.3d 19, 65 (N.D.N.Y. Sept. 30, 2022) (certifying a municipal well and a private well property damage class for liability and damages), *23(f) petition*

In its certification order, the district court here rigorously analyzed the parties' arguments and evidence, which included expert opinions, studies of the contamination, and other data, F.R.E. 702 motions on all experts, and a two-day evidentiary hearing. A2, 12-19, 44-47. The court certified a liability class with respect to the trespass, negligence, and negligent failure to warn claims, and bifurcated liability and damages phases of the case. A53.

Subsequently, in denying Defendants' motion to stay pending this Court's decision on Defendants' Rule 23(f) petition, the district court explained that Rule 23(c)(4) also allowed it to redefine classes or subclasses prior to certification for effective case management or to allow a class action to be maintained, and that it was within its discretion to bifurcate liability and damages phases of the case. JA6613-14.

---

*denied sub nom.*, No. 22-2616 (2d Cir. Jan. 31, 2023), *class decertified*, *Baker*, No. 16-cv-0917, 2023 WL 2388727 (N.D.N.Y. Mar. 7, 2023) (decertifying nuisance damage class only after plaintiffs voluntarily abandoned their nuisance claim); *Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-125, 2019 WL 8272995, at *12 (D. Vt. Aug. 23, 2019) (granting certification of Rule 23(c)(4) property damage class, *23(f) petition denied*, No. 19-2616 (2d Cir. Jan. 31, 2023).

## SUMMARY OF THE ARGUMENT

Rule 23 is a case and claims management tool for courts to use in their discretion to determine the best way to manage many claims arising out of the same course of conduct. The district court properly used its discretion to determine under Rule 23(b)(3) which claims it deemed could be best managed on a class-wide basis. In this class, not mass, action, the district court did not "sidestep" any requirement of Rule 23. Rather the court, well within its discretion, analyzed every element of Rules 23(a) and 23(b)(3) based on an evaluation of an extensive record developed over eight years, that includes eleven expert reports, corresponding *Daubert* motions, and a two-day evidentiary hearing. A10-48. The court certified a Rule 23(b)(3) liability class consistent with Rule 23 and decades of law that grant district courts that significant discretion. The court did not effect an "expansive" or "errant" application of Rule 23(c)(4), which Defendants claim so as to manufacture a basis for appeal. Defendants' invectives about "diluting" predominance and superiority requirements are simply wrong.

Many of Defendants' arguments are predicated on material misstatements of Plaintiffs' case and the evidence before the court. For

example, Plaintiffs do not allege PFOA was released from multiple sources over 65-square miles. Plaintiffs and their experts submitted evidence that there is one source, Defendants' facility, that contaminated a class of properties (A10-12) located within four and one-half miles from Defendants' facility (PSA1-6). Defendants are also wrong when they claim that it is not disputed that other sources may have contributed to toxic PFOA in the class geographic area, citing the court's summary of their own expert reports. OB23[3] (citing A45-46). Plaintiffs' experts dispute that claim, as the court found. A14-19. Defendants claim that some properties had no detectable PFOA, yet the district court found that Plaintiffs' expert Sullivan reliably concluded that Defendants' toxic PFOA was deposited on every property in the class geographic areas. A15-16; JA6455-6459.

Defendants' claim that the court did not address whether any common issues predominate over the individualized issues that it acknowledged can be certified is also wrong. OB48. Rather, it determined which were core issues that could be certified (A27-48), and others which could not (A48-54). The court considered speculation of

---

[3] "OB" refers to Defendants' Opening Brief.

Defendants' other sources of PFOA at particular locations within the class geographic areas and clearly stated why they do not defeat predominance given Defendants failure to provide property specific analysis. The court clearly explained within the context of this litigation how common issues predominate within a reasonable and workable segregable component of the case. A24-48. *Harris v. Medical Transportation Management Inc.*, 77 F.4th 746, 762 (D.C. Cir. 2023).

Defendants are simply wrong that there are individualized issues as to their intent to trespass or duty and their breach of duty. OB20. Plaintiffs' claims arise out of the toxic contamination of 10,000 properties alleging the *same* legal theories against the *same* Defendants operating the *same* source by the *same* conduct causing contamination by the *same* family of toxins by the *same* environmental pathways. A54. Defendants did not choose to act differently toward one property than another; they did not run their plant differently so it would affect a particular property. A5-19. Defendants released emissions uncontrolled into the ambient air without directing them toward any single property, the toxicity of the chemicals they used did not change property by property, and the mechanism of travel did not change. Recognizing this, the court certified

a liability class with respect to the trespass, negligence, and negligent failure to warn claims under Rule 23(b)(3). A54. The district court did not "reverse the burden of proof," but correctly held that once Plaintiffs met theirs, Defendants had the burden of producing sufficient evidence to rebut Plaintiffs', which Defendants wholly failed to do.

The district court under this Circuit's law and decades of jurisprudence had the discretion to certify a Rule 23(b)(3) liability class. Similarly, the court under this Circuit's law and decades of jurisprudence had the discretion to bifurcate damages for later determination. In drawing its conclusion to certify liability claims, the court emphasized that there is a distinction between the presence of PFOA contamination attributable to Saint-Gobain (an issue that is susceptible to class-wide proof and defenses) and the relative contribution of Saint-Gobain, as compared to alleged other sources at locations within the class areas (an issue that may require individualized analysis). A32.

The court clearly determined what issues would be tried based on a rigorous analysis of the parties' evidence. That the court performed a rigorous analysis of Rule 23(b)(3) requirements is evidenced not only in

the detail of its 55-page order, but in its decision not to certify nuisance or Plaintiffs' damages for class treatment.

In turn, Defendants' claim that the court certified a liability class under a weakened standard under Rule 23(c)(4) is wrong. This issue is clearly not present in this case where the court certified liability under Rule 23(b)(3) with a rigorous analysis of the facts, evidence, and the parties' arguments, after almost eight years of litigation, consideration of F.R.E. 702 motions on eleven experts, and a two-day evidentiary class certification hearing, taking into full account Defendants' unsupported claims of other sources, finding they did not defeat predominance. Nor is *Amici's* Rule 23(c)(4) argument at issue.

There is no Rule 7 or due process issue with the court's certification as Defendants were on full notice that Plaintiffs sought certification of their liability claims and, in turn, argued against certification of those claims. There is no issue with the Seventh Amendment, as the court's clear distinction between liability and damages will not have a second jury reconsider liability findings, special instructions to the jury will prevent any problems, and the district court is well capable of preventing retrial of these issues. Any Seventh Amendment issues are speculative

and not ripe. As discussed below, the court's certification order clearly laid out the issues to be tried and did not run afoul of Rule 23(c)(1)(B).

The court properly found class treatment of liability issues a superior method of managing what Defendants admit are the claims of over 10,000 property owners contaminated by Saint-Gobain's toxic PFOA emissions. This litigation is over eight years old. Two other cases for Saint-Gobain's toxic PFOA contamination in Vermont and in New York have long been certified. Plaintiffs have endorsed no less than eight experts to establish Saint-Gobain's liability and damages, all of whom have been challenged by Saint-Gobain with no less than six additional experts. No individual's claim could withstand the cost of proceeding individually, and the alternative Saint-Gobain seeks, individual liability trials for over 10,000 property owners repeating the same evidence using the same witnesses and risking inconsistent verdicts, would cause an immense burden on the court system and incredible additional delay. A finding of liability on any of Plaintiffs' trespass nuisance and negligence claims clearly advances and simplifies the litigation and may obviate the need for a liability trial on nuisance.

The district court was well within its discretion to certify liability claims for class management, and did not abuse that discretion in its order.

## STANDARD OF REVIEW

A district court has broad discretion to certify issues for class treatment. *See In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 17 (1st Cir. 2008). A court's class certification decision should only be reversed if defendants make a strong showing that the court's decision amounted to an abuse of discretion. *See Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000). An abuse of discretion only occurs when a district court omits consideration of a key factor, relies upon an improper factor, makes a clear error of judgment, or adopts an incorrect legal rule. *In re New Motor Vehicles*, 522 F.3d at 17.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION WHEN IT CERTIFIED A LIABILITY CLASS WITH RESPECT TO PLAINTIFFS' TRESPASS, NEGLIGENCE, AND NEGLIGENT FAILURE TO WARN CLAIMS

At the core of Defendants' Issues 1, 2, and 4 (OB22-23) is but one issue—whether the district court abused its discretion in certifying a

Rule 23(b)(3) liability class with respect to Plaintiffs' trespass, negligence, and negligent failure to warn claims, resulting in bifurcated liability and damages phases of the case.

### A. The Certification Order is Amply Supported by the Facts of this Case and a Rigorous Analysis of Commonality, and Predominance and Superiority

The district court specifically analyzed certification under the commonality, predominance and superiority requirements of Rule 23(a) and 23(b)(3). A1. The court properly determined that Saint-Gobain's liability under Plaintiffs' trespass, negligence, and negligent failure to warn claims is predicated on predominantly common issues that can be resolved jointly across the class, including the Defendants' actions in emitting toxic chemicals and their subsequent efforts to investigate, mitigate, and warn the potentially affected population of the emissions; the hazardous nature of the chemicals emitted; and the geographical scope and foreseeability of groundwater contamination. A2. The court moreover denied certification as to the nuisance claim and the damages issues. A3. This distinction shows that the court engaged in a rigorous analysis, probing behind the pleadings to the facts as the court documented. A4.

1. **The Court Rigorously Analyzed the Facts and Probed Behind the Pleadings**

The district court conducted a rigorous analysis of the facts. A5, 10, 12-19, 30-32, 34-48.

*Saint-Gobain's Simulations of Historic Contamination; Well Testing Results*. In considering whether Plaintiffs met their burden to show commonality and predominance of common issues, along with superiority, the district court considered:

- The results of PFOA testing at public water supply and private wells in the class area. A6;

- That Saint-Gobain hired Barr Engineering Company (Barr) to develop models to "evaluate and simulate the transport mechanisms of PFOA released by historical air emissions at the Saint-Gobain . . . facility in . . . that may have resulted in the presence of PFOA in soil and groundwater in the vicinity of th[e] facility." A8;

- That Barr compared the simulation results to "measured PFOA concentrations in soil and groundwater within the study area to identify areas where exceedances of regulatory standards potentially may be associated with historical air emissions" from

the facility," within boundaries which were defined by the NHDES and closely relate to the class geographic areas. A8;

- That Barr, to complete this simulation, used operational and emissions data from 2004 to 2014 provided by Saint-Gobain, from which it estimated how many pounds of PFOA were released by the facility every year from 1986 through 2014, and that according to these estimates, the facility released hundreds of pounds of PFOA into the air between 1986 and 2006 … ." A8;

- That Barr employed four models developed by the U.S. EPA or the U.S. Geological Services to estimate the movement of the PFOA emissions from the air, to the ground, and below to groundwater, and the purposes of those models. A8-9; and

- Barr concluded that it had "successfully modeled [t]he overall pattern and distribution" of PFOA in soil and groundwater within its study area, and it found that the air deposition of PFOA from Saint-Gobain's facility "may have contributed to the observed PFOA in groundwater in portions of the study area located in close proximity to the facility." A9-10.

*Parties' Experts' Opinions*.  The court noted that it had ruled on the parties' motions to exclude the opinions of several experts under F.R.E. 702, and the court deemed the opinions admissible, with some limited exceptions.  A12.  The court's 51-page F.R.E. 702 analysis covered seven of Plaintiffs' experts and six of Defendants' experts on liability and damages.  JA6447-97.  The court found, well within its discretion, the opinions of Plaintiffs' experts relevant and sufficiently reliable to support its class certification analysis, and considered relevant and reliable portions of Defendants' expert reports.  A12, 44-46.  The court also considered evidence presented by both parties during a two-day evidentiary hearing.  JA6168-6438.

The court considered data and opinions from Plaintiffs' expert Sullivan, who has 45 years' experience in air quality and meteorological analysis A13.  The court properly considered within its discretion that:

- Sullivan used data and modeling that is common to the class to conclude that Saint-Gobain's emissions of PFOA "dispersed and deposited" onto the ground at each and every property in the class areas.  A15.

- Sullivan's review of Barr's analysis of the airborne transport and deposition of PFOA from the facility using the AERMOD model, comparing the AERMOD results with data on the concentration of PFOA in groundwater in the class areas, which was gathered from the sampling of "hundreds of sites" from 2016 to 2018. *Id.*;

- Sullivan's testimony that

    '[d]ispersion of PFAS emissions from the Saint-Gobain facility in Merrimack occurs on an area-wide basis,' and is properly modeled using data that is common to the class areas, including 'emissions data, [ ] release specifications, [ ] emissions pathways, [and] [ ] meteorological data,' and that Sullivan could reliably estimate the 'dispersion and deposition of pollutants emitted from [the] Saint-Gobain facility at locations throughout the class geographic area' using this common data, and that 'it is neither necessary nor appropriate to model air quality or deposition impacts separately on a location-by-location basis to evaluate dispersion and deposition of APFO from the Saint-Gobain facility,' or 'to show that the PFAS contaminants from the Saint-Gobain facility were dispersed throughout and beyond the class geographic area.'

    A13-14;

- Sullivan's conclusion that:

    'the Saint-Gobain facility is the source of the high levels of PFAS contamination measured throughout the class geographic area[s].' More

15

specifically, he found that 'dispersion of PFAS emissions from the Saint-Gobain facility . . . occurs on an area-wide basis . . . throughout the boundaries of the class geographic areas, including all properties within these boundaries, including each class representative's property' and 'the locations of the MVDWW wells,' and this deposition 'occurred throughout the class areas each year [that] Saint-Gobain' and the facility's previous owner Chemfab 'were in operation and used APFO.'

A14;

- Sullivan's conclusion that the pattern of groundwater contamination in the class areas is consistent with Saint-Gobain as the source, with the concentration of PFOA decreasing as distance from the facility increases and approaching zero "at the most distant locations" from the facility. *Id.*;

- That Sullivan considered other potential sources of PFOA contamination in the class areas, that the NHDES "has evaluated over 40 potential sources of PFOA emissions," and the "only other identified airborne source of PFOA with quantified airborne emission rates is the Textiles Coated Incorporated (TCI) facility that operated in Amherst, New Hampshire from 1985 to 2006" and that "[e]missions from TCI do not explain the pattern of deposition

that occurs in the class geographic areas," particularly the "decreasing trend of PFOA [groundwater] contamination with distance from" the facility.  A14-15;

- Sullivan's opinion that other potential sources of contamination identified by the defendants, such as Harcros Chemicals Incorporated and the Merrimack landfill, are not "consistent with the observed contamination pattern that was created by the air deposition pathway."  A15; and

- Sullivan's opinion that other sources of PFOA emissions potentially had "localized" effects, but they "would not explain the general trend in the groundwater contamination pattern around [the] Saint-Gobain [facility]."  *Id.*

The court also considered the opinions of Plaintiffs' expert Shin who's focuses, in part, on modeling the fate and transport of toxic chemicals.  A16.  Specifically, the court considered:

- Shin's opinion that the four models that Barr used to evaluate and simulate the transport of PFOA air emissions from the Saint-Gobain facility are "well-accepted and thus widely used in the field

of environmental science and engineering" due to their "reliability and maturity." A16;

- That Shin concluded that emissions of PFOA from the Saint-Gobain facility "contributed to the observed PFAS in groundwater in the class area, based on the pattern of contamination, with high concentrations of PFOA observed in the wells closer to the facility and the topographic features present at the point of the air emissions. A16-17; and

- Shin's opinion that other sources of PFOA listed in the Barr Report "did not cause PFOA groundwater contamination in the class areas," in part because they are not proven to cause widespread PFOA contamination. A17.

The court also considered the opinions of Plaintiffs' experts Detwiler and Baggett on distribution of PFOA into groundwater and in municipal water. A17-19. The court also gave detailed consideration of Plaintiffs' damages experts. A19-24.

In analyzing whether Defendants met their burden of producing sufficient evidence to rebut Plaintiffs' showing, *In re Nexium Antitrust*

*Litigation*, 777 F.3d 9, 17, 27 (1st Cir. 2015), the court considered the evidence presented by Defendants' experts, which include:

- Mobile's opinions that testing showed there may be localized sources of PFOA.  A44-45;

- The opinions of engineers Connor and Panday that potential sources of PFOA to groundwater other than Saint-Gobain.  A45;

- Chinkin's opinion criticizing Plaintiffs' experts' opinions that the Merrimack facility is the single facility that explains observed PFAS contamination throughout the proposed class areas and noted that NHDES was investigating other sources which "may contribute to the observed PFAS concentrations" in the class areas.  A45; and

- Chinkin's opinion that the variability of PFOA concentration across the class areas, "is not consistent with a single source impacting the proposed class areas" and "do[es] not support Saint-Gobain as the main source of PFAS" in the class areas, and that a property-by-property analysis is required.  A45-46.

Thus, the court probed behind the pleadings and executed the required rigorous analysis.

### 2. The Court Properly Found that the Commonality Requirement is Satisfied

The court fully analyzed the Rule 23(a) commonality requirements as identified in *In re New Motor Vehicles*, 522 F.3d at 19, and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011). A27-28. After a thorough review of the parties' evidence and arguments, the court concluded, well within its discretion, that the commonality requirement is satisfied because Defendants' release of PFOA; subsequent warnings and mitigation efforts; the geographical scope of Saint-Gobain's contamination; and PFOA's toxic nature are all issues central to Plaintiffs' claims, and that class-wide determination will meaningfully advance resolution of Plaintiffs' claims. A28. The court correctly analyzed that Plaintiffs' claims are predicated on the theory that Saint-Gobain caused the entry of a contaminant onto their properties, and that its actions surrounding the emission of PFOA and subsequent mitigation efforts, and the resulting contamination of Plaintiffs' groundwater, are central to the duty, breach, and causation elements of the negligence claims. *Id.* The individualized issues Defendants claim were fully considered by the court and do not defeat commonality.

The court found that Plaintiffs provided class-wide proof of the

geographic scope of contamination attributable to Saint-Gobain by using common data and models to estimate the transmission of PFOA from the facility's air emissions to the groundwater on an area-wide, and not site-specific, basis, based on the use of the same models that Saint-Gobain's own consultant Barr used to simulate the movement and presence of Saint-Gobain's PFOA emissions.  A30.

The court also considered Defendants' multiple arguments that PFOA contamination must be modeled on a site-specific or property-by-property, instead of on an area-wide basis.  A31.  The court found that Defendants' experts did not use a property-by-property or localized basis to map locations of contamination caused by Saint-Gobain, or to refute the presence of PFOA attributable to Saint-Gobain.  A31.  The court correctly concluded that to the extent that the Defendants intend to argue that Saint-Gobain's PFOA is not present in certain portions of the class area groundwater, these arguments do not defeat commonality: the geographic scope of Saint-Gobain's contamination remains a common issue.  A31, n. 92.

The court properly concluded that Defendants' defenses to trespass, negligence and failure to warn can be asserted in a manner that is

manageable in a class format, and, if they require some individualized analysis (which the court did not find), the record did not indicate that such analysis would overwhelm the common issues and evidence, and did not preclude a finding of commonality. *Id.* The also court properly concluded that Defendants' challenges to the validity, comprehensiveness, and accuracy of Plaintiffs' area-wide models and underlying assumptions apply across the class. A31-32. The court therefore found that the geographic scope of Saint-Gobain's groundwater contamination is a common issue that can be resolved on a class-wide basis. A32.

In drawing its conclusion, the court emphasized the distinction between (1) the presence of PFOA contamination attributable to Saint-Gobain (an issue that is susceptible to class-wide proof and defenses); and (2) Saint-Gobain's contribution, as compared to other sources, to the amount of PFOA contamination at particular locations within the class areas (an issue that may require individualized analysis). *Id.*; *see Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413-15 (6th Cir. 2018), *cert. denied,* 139 S. Ct. 1319 (2019) (upholding certification of seven issues that would not fully resolve liability under Rule 23(b)(3) and

noting that the issue of whether defendants created the risk of vapor intrusion is distinct from whether they caused actual injury, insulating the issue from overlapping).

The individualized issues Defendants claim preclude certification of a liability class in fact do not. The court directly addressed and thoroughly considered Defendants' arguments and evidence in its order and properly concluded that commonality existed.

### 3. The Court Properly Determined that a Liability Class with Respect to the Trespass, Negligence, and Negligent Failure to Warn Claims under Rule 23(b)(3) Presents Predominant and Common Issues

Contrary to Defendants' Rule 23(c)(4) argument (supported by their *Amici*), advanced to manufacture an appellate issue, the district court clearly analyzed certification of liability issues under Rule 23(b)(3). Supporting that it performed a rigorous analysis under Rule 23(b)(3), the court found that individual issues predominated as to Plaintiffs' nuisance claim and declined to certify that claim for class treatment. A39-41. It properly exercised its considerable discretion certifying liability under Plaintiffs' trespass, negligence, and negligent failure to warn claims.

### a. The Court Properly Certified Plaintiffs' Trespass Claim Pursuant to the Rule 23(b)(3) Predominance Standard

The court properly found within its discretion that the two elements of trespass Defendants contended require individualized proof in fact do not. A36. Considering evidence from the parties collective eleven experts including robust F.R.E. 702 challenges, the court concluded that the geographic scope of contamination is suitable for class-wide determination. A36. The trespass intent element does not change this analysis. The court considered Defendants' argument that the foreseeability of Saint-Gobain's entry onto Plaintiffs' property varied "according to time and context" and is not susceptible to class-wide proof. A36-37. However, it found, consistent with New Hampshire law, that the intent requirement is satisfied if Saint-Gobain knew that its act of emitting PFOA was substantially likely to cause an entry of the contaminant into the class areas regardless of when that entry, and resulting harm, occurs or occurred. A38.

The court considered evidence that at least by 2003, Saint-Gobain monitored the PFOA issue, knew that [the] EPA was concerned about PFOA's toxicity to animals, and that its emissions were going into the

atmosphere, and that Saint-Gobain continued releasing hundreds of pounds of PFOA into the air in 2003, 2004, 2005, and 2006, before reducing its emissions in 2007. *Id.* The court found that Saint-Gobain's intent during the 2003-2006 time period can be established through common proof of Saint-Gobain's knowledge of (1) the occurrence and volume of PFOA emissions from its facility; (2) the toxic nature of PFOA; and (3) the science showing that PFOA travels in air to land, and then to groundwater on an area-wide basis. *Id.* The court, within its discretion, found no evidence to conclude, and found that Saint-Gobain did not contend, that its knowledge of these matters varied during the 2003-2006 period, or that its intent to cause entry varied by location, or show that its arguments would or could be made on an individual basis. A38-39.

The court correctly concluded that if Saint-Gobain argues that some class members were not and/or will not be harmed by the PFOA emissions from the 2003-2006 period, this argument goes to damages, and not liability. A39. The court found, well within its considerable discretion, analyzing predominance under Rule 23(b)(3), that the predominance element is satisfied with respect to Saint-Gobain's liability for trespass. *Id.*

### b. The Court Properly Certified Plaintiffs' Negligence and Negligent Failure to Warn Claims Pursuant to the Rule 23(b)(3) Predominance Standard

The court also clearly analyzed Plaintiffs' negligence and negligent failure to warn claims under the Rule 23(b)(3) predominance standard. The court, within its discretion, found that the existence of a duty turns on two issues that are susceptible to class-wide proof—the foreseeability and magnitude of risk of harm to the class resulting from Saint-Gobain's emissions. A42. The court properly determined that foreseeability depends on class-wide proof regarding Saint-Gobain's knowledge of its own emissions, the toxicity of PFOA, and the pathways through which those emissions cause groundwater contamination through a given area, and common evidence regarding the volume of PFOA emissions from the facility, and the harmful effects of PFOA and the extent to which it is likely to travel based on area-wide modeling. A42.

The court properly found that breach of duty can also be proven through common evidence of Saint-Gobain's actions with respect to emissions, mitigation, and warning the public, given that Saint-Gobain's knowledge of the contamination risks from its emissions have not varied since at least 2003, that it continued emitting hundreds of pounds of

PFOA through 2006, and that it did not provide notification of the contamination to NHDES until 2016. *Id.* The court found that breach of duty could be proven through evidence of the geographic scope of PFOA contamination in the class members' groundwater attributable to Saint-Gobain based on the class-wide evidence relying on area-wide models to show that the groundwater contamination throughout the class areas is attributable to Saint-Gobain, at least in part. A42-43.

As to cause, the court correctly determined the causation inquiry focuses on whether Defendants' negligence caused or contributed to cause the contamination, not on whether Defendants' negligence was the sole cause or the proximate cause. A43 (citing *Brookline School Dist. v. Bird, Inc.*, 142 N.H. 352, 355 (1997)). The court also correctly determined that to establish that Defendants' conduct as the cause-in-fact, Plaintiffs must establish that the causal link between the negligence and the injury probably existed. A43 (citing *Est. of Joshua T.*, 150 N.H. 405, 407-08 (2003)). The court correctly found that Plaintiffs asserted that they can prove causation on a class-wide basis through their experts' opinions that Saint-Gobain's emissions contributed to groundwater contamination across the class areas, and that Saint-Gobain did not adequately rebut

this assertion by establishing that individualized proof is necessary to demonstrate Saint-Gobain' contribution to the presence of PFOA contamination within the class areas, and that Saint-Gobain's challenges to Plaintiffs' area-wide models are common to the class. A43-44. Thus, the court, well within its discretion, found that the issue of whether Saint-Gobain is the cause-in-fact of the harm to the class members is susceptible to class-wide resolution. A44.

As to whether Defendants' conduct was a substantial factor in causing the contamination, the court found that Plaintiffs' experts agree that other sources may have contributed to localized contamination in the class areas, but that they do not explain the contamination seen throughout the class areas. A44. The court found that the opinions of Saint-Gobain's experts that there may be alternative sources of PFOA do not defeat predominance on the issue of Saint-Gobain's liability for negligence because none of Saint-Gobain's experts provided or used a property or site-specific method to identify locations in which Saint-Gobain's emissions were not a substantial factor in contamination, which in turn strongly suggested that Saint-Gobain intends to argue at trial against causation by asserting, as reflected in its experts' opinions, that

Plaintiffs' evidence is simply incomplete or inadequate because it does not measure or model the contributions of other sources of PFOA emissions, which are arguments common to the class.  A47.

In addition, the court found that even if Saint-Gobain plans to assert its defense against causation by using area-wide models to map out regions in which other sources caused groundwater contamination this defense would be common to the class or manageable in the class action format.  *Id.*  The court properly found that even if Saint-Gobain does employ property- or site-specific analysis to support its position on causation, "individualized issues of causation do not preclude class certification" where "the proof as to other elements of negligence will be class-wide." A47-48 (citing *Collins v. Olin Corp.*, 248 F.R.D. 95, 104 (D. Conn. Feb. 21, 2008)).  The court, within its discretion, ultimately concluded that even if individual inquiries concerning causation arise, they would not overwhelm the common issues concerning duty and breach so that the predominance element is satisfied with respect to Saint-Gobain's liability for the torts of negligence and negligent failure to warn.  A48.

Here, the common aggregation-enabling issues as to liability are more prevalent than the aggregation defeating individual issues. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016) (quoting 2 *Newberg on Class Actions* § 4:45 (5th ed.). The court properly found Rule 23(b)(3) predominance as to Plaintiffs' liability claims.

### c. The Court Properly Considered and Found Rule 23(b)(3) Superiority

The district court also fully considered and concluded that class treatment of Plaintiffs' trespass, negligence and negligent failure to warn claims was superior to other methods of adjudication as required by Rule 23(b)(3). A54. In its analysis of what issues were common to the class, the court clearly set out what issues it determined would be presented at the liability trial and so how the liability trial would play out. A2-3, 28, 32, 35-36, 38, 41-43, 53-54. The court found that without class certification, individual Plaintiffs would repeatedly be forced to prove the same factual issues concerning liability, for example, the presence of contamination on their property, Saint-Gobain's actions with respect to emissions and mitigation, and the hazards associated with PFOA. A54. The court found that this would be both inefficient and costly, given that these issues are suitable to class-wide proof and require multiple expert

opinions and extensive expert analysis. *Id.* The court found that a class action "achieve[s] economies of time, effort, and expense, and promote[s] . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." A54 (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

The question for superiority is not whether a class action is manageable in the abstract but how any problems that might occur in managing a class suit compare to managing litigation without a class suit. *See* 2 *Newberg and Rubenstein on Class Actions* § 4:72 (6th ed.). Saint-Gobain proposed no other alternative to class certification than over 10,000 repeat individualized trials on whether Saint-Gobain is liable for causing or contributing to PFOA contamination in the class areas.

Rule 23 must be read to authorize class actions in cases where seriatim litigation would promise such modest recoveries as to be economically impracticable. *Gintis v. Bouchard Transp. Co.*, 596 F.3d 64, 66-67 (1st Cir. 2010). Even if some class members may be capable of suing on their own, managing a case as a class action alleging a single course of conduct is superior to managing several thousand suits. *See*

*Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Pharmacy, Inc.*, 540 F.Supp.3d 182, 220 (D.R.I. May 18, 2021).

Class actions are appropriate when they achieve economies of time, effort, and expense. 2 *Newberg and Rubenstein on Class Actions* § 4:67 (6th ed.) (citing Advisory Committee Note to 1966 Amendments). The efficiencies that a class action may achieve are even greater when the class is large. *Id.*

Where there are identical issues across all the claimants, the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings. *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) (upholding certification of a Rule 23(b)(3) class, finding the questions whether Met-Coil leaked TCE and whether the TCE reached the soil and groundwater beneath the homes of the class members are common to all the class members). Even if questions of liability are answered against Defendants, the consequences will not be catastrophic because the individual class members will still have to prove the fact and extent of

their individual injuries. *Id.* A class action is a superior method of adjudicating issues of liability in this case where the principal liability questions will rely on the same proof, making it inefficient to try thousands of separate cases alleging the same misconduct using the same proof. *Bruzek v. Husky Oil Operations Ltd.*, 520 F.Supp.3d 1079, 1099 (W.D. Wis. Feb. 19, 2021) (certifying a Rule 23(b)(3) class for liability concerning a refinery explosion). *See also Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 488 (S.D. Ohio Sept. 23, 2004) (finding Rule 23(b)(3) superiority in property damage contamination case because proof of use and misuse of toxins would be the same making it inefficient to relitigate).

Defendants claim that superiority is not satisfied if there are "uninjured" class members. OB54-55. The scientific evidence does not support the contention that uninjured class members exist here because there is credible evidence that PFOA was deposited on every property. A15-16, A30. Plaintiffs' expert Bell found diminution in value injury for every class property. JA1692-2085 at JA1693-1712 (Report of Plaintiffs' Randall Bell, August 28, 2020). The court found that Bell's methodology was reliable and admissible. JA6475-6483. Nonetheless, the court

acknowledged Defendants' argument but correctly found that even assuming uninjured class members exist, class certification is not precluded. A29-30 (citing *In re Asacol Antitrust Litig.,* 907 F.3d 42, 54 (1st Cir. 2018)). *See also In re Nexium*, 777 F.3d at 30 (if common issues predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class should not have a substantial effect on the substance or quantity of evidence offered). The court properly found within its discretion that the common question in this case, susceptible to class-wide proof, is the geographic scope of PFAS contamination attributable to Saint-Gobain, and to what extent this contaminated area overlaps with the class areas. A30.[4]

For a court to refuse to certify a class because of vaguely perceived management problems discounts too much the power of the court to deal

---

[4] Defendants' claim that rising home prices mean class members lost no value, and so are "uninjured" (OB20, 56-57, 64) is a matter of expert testimony for trial (JA1692-2085 at JA1693-1712 (Report of Plaintiffs' Randall Bell, August 28, 2020)), which found diminution in value even with the rise of prices because prices would have increased further, JA6482. *See also* A48-54 ("[a]n overall rise in property values can be consistent with a diminution in value due to contamination, if the class area property values would have risen more absent the contamination") the point is irrelevant given the court did not certify damages.

with a class suit flexibly, in response to difficulties if they arise. *Yaffe v. Powers,* 454 F.2d 1362, 1365 (1st Cir. 1972), *abrogated on other grounds by Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978). *See also Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). The failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001), *abrogated on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).

The superiority the court found of deciding predominant common liability issues is clear. A54. This litigation is almost nine years old. Plaintiffs have endorsed no less than eight experts to establish Saint-Gobain's liability and damages, all of whom have been challenged by Saint-Gobain with no less than six additional experts. No individual's claim could withstand the cost of proceeding individually, and the alternative Saint-Gobain seeks, individual liability trials for over 10,000 property owners, would cause an immense burden on the court system

and incredible additional delay when the evidence of Saint-Gobain's liability would be repeated in every trial, is common and predominates. And a finding of liability on any of Plaintiffs' trespass or negligence claims may obviate the need for a liability trial on nuisance.

### B. Property Damage Claims Have Been Repeatedly Certified, Upheld, And Denied Review

When there is a common nucleus of operative facts, certification is warranted. In cases involving environmental contamination, the defendant's conduct and culpability are common to the class. In other words, whether and how the defendant released chemicals, and the extent of that contamination are common issues.

"Courts have repeatedly drawn distinctions between proposed classes involving a single incident or single source of harm, for which class certification is appropriate, and proposed classes involving multiple sources of harm occurring over time." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 435, 447 & nn. 95-104 (S.D.N.Y. Jan. 3, 2007) (collecting cases with class certifications involving a single incident or cause of harm) (*cited approvingly by Gintis*, 596 F.3d at 67).

The propriety of liability certification where there is a single source of harm is illustrated in the two cases where class treatment was ordered

for plaintiffs asserting property damage claims arising from contamination by PFOA released from Saint-Gobain facilities. *Sullivan*, 2019 WL 8272995, at *10-12 (certifying liability claims of nuisance, trespass, negligence, and strict liability); *Baker*, 632 F.Supp.3d at 65 (quoting *Sullivan*; certifying two property damage classes under Rule 23(b)(3) and a liability-only class for nuisance damage under Rule 23(c)(4)). Each district court concluded that "within the range of environmental contamination cases, this one is simpler than most," with "[a] single industrial process operated for three decades by one corporation and its successor is claimed to be the source of an unusual chemical" that "is concentrated in an area of a few square miles which both parties and the state regulators have mapped in detail." *Baker*, 632 F.Supp.3d at 39 (quoting *Sullivan*, 2019 WL 8272995, at *14-15). "The defenses that PFOA is ubiquitous in trace amounts or that another company or [alternate source] is the true source apply with equal force to all class members." *Id.* The same is true here.

Defendants mischaracterize *Dukes* as a sea-change in Rule 23 analysis. OB16. It is not. *Dukes* simply held that plaintiffs' claims must rest on a common contention that is capable of class-wide resolution.

*Dukes*, 564 U.S. at 350. And thus, the sensible, efficient approach of certifying environmental and toxic tort class actions when the existence, nature, and scope of contamination caused by a common course of conduct are shared (like here) remains sound.

Defendants' oft-repeated claim that no circuit court has "approved" Rule 23(b)(3) certification of a property damage case is a red herring. First, it is axiomatic that each case is measured by its own facts. *See* 5 *Moore's Federal Practice – Civil* § 23.45. In fact, there exist numerous cases in which courts certified liability classes for property damages after *Dukes,* including those like *Baker* and *Sullivan,* where the circuit court of appeals rejected 23(f) petitions.[5] Defendants' contention is an attempt to draw a distinction without a difference because district courts analyzing class certification apply post-*Dukes* law. Numerous district courts have certified Rule 23(b)(3) class property damage claims

---

[5] *Nix v. Chemours Co. FC*, No. 17-cv-189, Slip Copy, 2023 WL 6471690, at *16-17 (E.D.N.C. Oct. 4, 2023), *23(f) petition denied*, No. 23-269 (4th Cir. Nov. 17, 2023); *Bell v. WestRock CP, LLC*, No. 17-cv-829, 2019 WL 1874694, at *5-6 (E.D. Va. Apr. 26, 2019), *23(f) petition denied*, No. 19-212 (4th Cir. Jun. 16, 2019); *Andrews v. Plains All Am. Pipeline, L.P.*, No. CV15-4113, 2018 WL 2717833, at *10 (C.D. Cal. Apr. 17, 2018), *23(f) petition denied*, No. 18-80054 (9th Cir. Jun. 16, 2019); *Greene v. Will*, No. 09-cv-510, 2013 WL 12309515, at *5 (N.D. Ind. Jan. 29, 2013).

following *Dukes*. *See*, *e.g.*, *Nix*, 2023 WL 6471690, at \*27-28 (granting Rule 23(b)(3) class certification in a groundwater contamination class action of three subclasses for property damage claims); *Stepp v. Monsanto Research Corp.*, No. 91-cv-468, 2012 WL 604328, at \*8 (S.D. Ohio Feb. 24, 2012) (granting Rule 23(b)(3) class certification in toxic tort class action of property damage claims); *Bruzek*, 520 F.Supp.3d at 1100 (granting Rule 23(b)(3) class certification in toxic tort class action of property damage claims to determine common questions of liability and leaving issues of damages to individualized hearings); *Navelski v. Int'l Paper Co.*, 244 F.Supp.3d 1275, 1284 (N.D. Fla. Feb. 24, 2017) (granting Rule 23(b)(3) class certification to determine common questions of liability for negligence, nuisance, trespass, and strict liability claims brought by residents downstream from a collapsed dam). *See also In re Deepwater Horizon*, 739 F.3d 790, 812-19 (5th Cir. 2014) (noting previous affirmances of class certification in mass tort cases "in which virtually every issue prior to damages is a common issue"); *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1189 (10th Cir. 2023) (liability only class).

The law of this Circuit remains that "courts can certify classes as to liability only, leaving damages for later individualized determinations." *In re Prograf Antitrust Litig.*, No. 11-md-02242, 2014 WL 4745954, at *1 (D. Mass. June 10, 2014).[6]

Finally, none of the cases Defendants cite involved certification of liability claims only in a Rule 23(b)(3) class with respect to trespass, negligence, and negligent failure to warn claims brought by owners of property affected by toxic contamination, alleging the same legal theories against the same defendants, who operated a single source that released the same group of toxins via an identical environmental pathway and

---

[6] *See also Marrero-Rolon v. Puerto Rico Elec. Power Auth.*, No. CV-15-1167, 2018 WL 4740202, at *8 (D.P.R. Sept. 30, 2018), *23(f) Petition denied*, No. 18-8020 (1st Cir. Mar. 12, 2021); *DaSilva v. Border Transfer of MA, Inc.*, 296 F.Supp.3d 389, 406 (D. Mass. Nov. 9, 2017); *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F.Supp.2d 263, 269 (D. Mass. Mar. 4, 2011) (certifying liability class in racketeering case), *23(f) Petition denied*, No. 11-8017 (1st Cir. 2013). Additionally, numerous federal courts in other Circuits have certified liability-only classes, leaving damages for later individualized determinations. *See, e.g., In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 860 (6th Cir. 2013); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578 (S.D.N.Y. Aug. 8, 2013), *aff'd*, 602 Fed. Appx. 3, 24 (2d Cir. 2015); *Stender v. Archstone-Smith Operating Trust*, No. 07-cv-02503, 2015 WL 5675304, at *11 (D. Colo. Sept. 28, 2015); *Brown v. City of Detroit*, No. 10-cv-12162, 2014 WL 7074259, at *3 (E.D. Mich. Dec. 12, 2014); *In re Motor Fuel Temperature Sales Practices Litigation*, 292 F.R.D. 652, 676 (D. Kan. Apr. 5, 2013).

course of conduct causing similar damage.[7] *Tarrify*, where a class of owners of foreclosed properties sought certification of their claims challenging a foreclosure statute as a taking, the court found that controlling issues (*e.g.*, does each property include surplus equity?)

---

[7] *See Prantil v. Arkema, Inc.*, 986 F.3d 570, 573, 579-80, 582 (5th Cir. 2021) (vacating certification for reconsideration of a Rule 23(b)(3) class which sought property and health damages, which arose from a series of emissions, triggered by a hurricane, fire, and subsequent multiple release events because of individualized issues on causation injury and damages; *Crutchfield v. Sewer and Water Board of New Orleans*, 829 F.3d 370, 373-75, 376 (5th Cir. 2016) (affirming denial of certification of a Rule 23(b)(3) class against the board and third party defendants claims stemming from different construction activities—carried out by different defendants over several years); *Ebert v. General Mills, Inc.*, 823 F.3d 472, 475-76, 479 (8th Cir. 2016) (reversing certification of a Rule 23(b)(2) and 23(b)(3) class finding individualized issues of exposure and noting that the "action is directed at TCE in breathable air, where both its presence and effect differ by property."); *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084-87 (7th Cir. 2014) (reversing certification for reconsideration of a Rule 23(b)(3) class brought claims against multiple defendants over 90 years for groundwater contamination by benzene and other contaminants where the court did not examine predominance issues; distinguishing cases involving a single source); and *Gates v. Rohm and Haas*, 655 F.3d 255, 258, 274 (3d Cir. 2011) (affirming denial of certification of a liability-only issue class related to six defendants' dumping of wastewater containing vinylidene chloride into a nearby lagoon that seeped into an underground aquifer where it degraded into vinyl chloride, which then evaporated into the air from the shallow aquifer and was swept by the wind over a lake used to obtain drinking water. *Boughton v. Cotter Corp*, 65F3d823, 825-28 (10th Cir. 1995), also does not support Defendants' contention; it was decided 16 years before *Dukes*.

required individualized determinations such that it was not susceptible to class-wide proof. *Tarrify Properties v. Cuyahoga County*, 37 F.4th 1101, 1106-07 (6th Cir. 2022). Here, unlike *Tarrify*, controlling core issues as to Defendants' liability are susceptible to class-wide proof.

### C. Defendants' Attempt to Impeach the District Court's Certification of a Liability Class By Speculation of Localized Other Sources Fails to Defeat the Court's Predominance Conclusions

In rearguing the evidence of the presence and extent of PFOA that the district court evaluated, Defendants misstate the record and the law. The court found that the geographic scope of Saint-Gobain's groundwater contamination is a common issue that can be resolved on a class-wide basis. A32. The court properly distinguished the presence of PFOA contamination attributable to Saint-Gobain from the relative contribution of Saint-Gobain relative to other sources, which it emphasized may require individualized analysis. A32. The possibility of speculative, unproven defenses such as those Defendants advance here does not defeat class certification. *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 298 (a defendant's "speculation and surmise" should not tip the decisional scales in a class certification ruling).

It is on this correct distinction that the district court certified a liability class. In quoting the court, Defendants omit critical language. OB49. Indeed, the court actually concluded that "[t]hese [defense] expert opinions lend some, credible support to the possibility that individualized or site-specific analysis is needed to determine the extent to which other sources contributed to contamination in parts of the class areas, and whether Saint-Gobain's emissions are a substantial factor among those sources at particular locations." A46. The court further concluded that these opinions do not defeat predominance on the issue of Saint-Gobain's liability for negligence and identified three reasons for that conclusion. A46-47. To establish liability for trespass, Plaintiffs must only show the fact of entry (and the element of intent), irrespective of whether the entry causes harm. A36. To prove liability for negligence or negligent failure to warn, Plaintiffs must show duty and breach of duty and proximate cause of some injury, here the intrusion of toxic chemicals on the class properties. A41. Plaintiffs do not have to show the extent of injury or the relative contributions of injury as opposed to other particular causes.

Plaintiffs are not required to exclude all other possible causes. *See Kierstead v. Betley Chevrolet-Buick, Inc.*, 389 A.2d 429, 432 (N.H. 1978).

Defendants, not Plaintiffs, have the burden of proving contribution from other parties they have identified. *State v. Exxon Mobil Corp.*, 126 A.3d 266, 304-305 (N.H. 2019); *DeBenedetto v. CLD Consulting Engineers, Inc.*, 903 A.2d 969, 981(N.H. 2006). Plaintiffs need not prove Defendants are the "sole cause" of PFOA contamination in the class geographic area. *Carignan v. N.H. Int'l Speedway*, 858 A.2d 536, 542 (N.H. 2004). Nor must Plaintiffs "prove a series of negatives" or "offer evidence which positively excludes every other possible cause" of the harm. *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 45 (1st Cir. 2013). Rather, Plaintiffs must prove the Defendants were a "substantial factor" and "caused or contributed to the harm." *Carignan*, 151 N.H. at 414, 858 A.2d at 542 (emphasis added). Saint-Gobain is liable if its conduct was a substantial factor in bringing about the injury even though other factors may have also contributed to the injury; it does not have to be the sole cause. *See* N.H. Civil Jury Instructions §§ 6.1, 7.1 (2020-2021 ed.). As the court found, Plaintiffs' experts have shown that Saint-Gobain is more likely than not the significant source of PFOA contamination throughout the Class Geographic Areas. A14-17.

Though Defendants claim that Plaintiffs' experts concede that PFOA emissions from a third-party facility "may have contributed contamination in the class areas," OB23, Plaintiffs' experts concluded that emissions from the TCI facility did not explain the pattern of PFOA deposition that occurs in the class geographic areas, particularly the decreasing trend of PFOA contamination with distance from the facility. A15-17. Speculative localized effects do not defeat the court's conclusion of predominance.

Contrary to Defendants' argument, the district court did consider whether the presence and extent of PFOA can be resolved class-wide. It specifically identified three reasons why, even if there was a possibility that other sources contributed to contamination in parts of the class areas, that fact does not defeat predominance. A46-A48. Defendants' assertion regarding the variability of testing of wells, an argument the district court considered, as its citations demonstrate, does not change the fact of Saint-Gobain's contribution of contamination that forms the basis for liability for trespass, negligence and negligent failure to warn.

The district court found that Plaintiffs' expert Sullivan credibly concluded that the Saint-Gobain facility is the source of the high levels of

PFAS contamination measured throughout the class geographic areas, that dispersion and deposition of PFAS occurred on all properties within the class geographic areas, and that the pattern of groundwater in the class areas is consistent with Saint-Gobain as the source of contamination. A14. The court also found that Sullivan credibly concluded that emissions from the only other potential airborne source, TCI, do not explain the pattern of deposition that occurs in the class geographic areas, and that the other potential sources of contamination are not consistent with the observed contamination pattern created by the air deposition pathway. A15. The court found that Sullivan credibly determined that Saint-Gobain's emissions of PFOA dispersed and deposited on each and every property in the class areas, and that other sources potentially had "localized" effects, but they would not explain the general trend in the groundwater pattern around the Saint-Gobain facility. A15. The court also found Plaintiffs' expert Shin credibly concluded that the PFOA air emissions from the Saint-Gobain facility contributed to the observed PFAS in groundwater in the class areas, and that the other sources of contamination consultant Barr identified did not

cause contamination in the class areas because they are not proven to cause widespread PFOA contamination. A16-17.

The court did not "flip" any burden on Defendants. The law is clear that once Plaintiffs have made their initial showing, Defendants have the burden of producing sufficient evidence to rebut that showing. *In re Nexium*, 777 F.3d at 27. Plaintiffs demonstrated that the issues of presence, extent, and source of PFOA are common through the class. A30-32. Plaintiffs' evidence, as the court acknowledged, shows that PFOA was present on every class member's property as the court concluded. A13-19, 30-32.

Defendants are similarly wrong about the court's conclusion on causation. First, the court found that none of the Defendants' experts provided or used a property- or site-specific method to identify locations in which Saint-Gobain's emissions were not a substantial factor in contamination. A47. Again, the possibility of speculative, unproven defenses does not defeat class certification. *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 298. Second, the court identified three ways in which Saint-Gobain may challenge Plaintiffs' actual evidence of class contamination, which the court had to do because Defendants failed to demonstrate

specifically how they would do so.  A46-48.  The court properly concluded that even if individual inquiries concerning causation arise, they would not defeat predominance.  A48.  This conclusion was well within its discretion.  The court's citation to *Collins*, 248 F.R.D. at 104 correctly states the law; *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 466 (D.N.J. 2009), is an out of circuit district court's conclusion on *Collins'* analysis of a strict liability claim which Plaintiffs do not bring here. *Dukes*, 564 U.S. at 350, did not create a "more stringent test for commonality," and Defendants citation to *In re Asacol*, 907 F.3d at 55 addressed aggregate damages, not injury in fact and proximate cause untethered to specific facts.  The district court did not err in relying on *Collins*, nor does its reliance on *Collins* affect the validity of the court's predominance analysis.

Defendants challenge the court's predominance analysis based on diminution in value claims that were not certified for class treatment. OB56-57.  The court specifically left such a determination for the damage phase of the case.  A53.  Nothing, then, will prevent further discovery on those issues to the extent they are relevant.

This litigation is over eight years old. If Defendants had evidence that another source of PFOA actually caused contamination of any private or municipal well, they would have produced that evidence at the time of certification, or even this appeal, and have not.

### D. Rule 23(b)(3) Allowed the Court in its Discretion to Maintain the Class Action by Certifying a Liability Class and Bifurcating Damages from Liability

It is axiomatic that courts have the authority to manage trials as they seem fit. *See, e.g.*, Fed.R.Civ.P. 42; 4 *Newberg and Rubenstein on Class Actions* §§ 11:1, 11:5 (6th ed.) ("In *bifurcated proceedings*, common issues (usually liability) are tried first, with the outcome applying to the entire class; if liability is established, individual damages are handled in subsequent proceedings that may take one of several forms. Issue certification—where only the issue of liability is certified for class action treatment—also fits this model."); *Manual for Complex Litigation* (Fourth) § 21.24, at 273 (4th ed.).

A court may certify a Rule 23(b)(3) class for certain claims. *Id.* An issues-class approach contemplates a bifurcated trial where the common issues are tried first, followed by individual trials on questions such as proximate causation and damages. *Id.*

It is well-within a district court's "discretion to split a case by certifying a class for some issues, but not others, or by certifying a class for liability alone where damages or causation may require individualized assessments." *See* JA6613-14; *In re Nexium*, 777 F.3d at 21 (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003)). Courts may bifurcate *sua sponte*. 4 *Newberg and Rubenstein on Class Actions* § 11:5 (6th ed.); *see also, Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) ("[T]here is no rule that if a trial is bifurcated, it must be bifurcated between liability and damages. The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication.") (citation omitted).

Bifurcation and even finer divisions of lawsuits into separate trials are authorized. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1302 (7th Cir. 1995). In *Rhone Poulenc*, a nationwide class action for persons subject to the infection of the blood supply by AIDS, criticized the court's decision to bifurcate the trial where subsequent trial would be in different courts "scattered throughout the country" and the first jury

would not find liability. *Id.* at 1303. And *Rhone Poulenc* never considered Rule 23(c)(4). Here, unlike *Rhone-Poulenc*, the first jury would determine liability as to trespass, negligence, and negligent failure to warn under the same theory of liability in the same court in the District of New Hampshire.

The decision to hold for a second phase certain claims is a classic exercise of the district court's case management discretion. *See Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015). Under this Circuit's precedent, the decision to bifurcate elements of the case is left to the sound discretion of the district court. *Lund*, 807 F.3d at 12; *see also*, *Rio Mar Assocs., LP, SE v. UHS of Puerto Rico, Inc.*, 522 F.3d 159, 167 (1st Cir. 2008).

Here, the district court did nothing out of the ordinary when it certified a liability class for the trespass, negligence, and negligent failure to warn claims resulting in the bifurcation of the liability and damages phases of the case.[8] Plaintiffs had clearly asked that liability

---

[8] Courts routinely certify Rule 23(b)(3) class as to determine common questions of liability under tort claims. *See e.g. Mejdreck v. Lockformer Co.*, 01 C 6107, 2002 WL 1838141, at *6-7 (N.D. Ill. Aug. 12, 2002), *aff'd sub nom*, *Mejdrech*, 319 F.3d 910 (affirming certification of a Rule 23(b)(3) class to determine liability (i.e., whether or not and to what

claims be certified, JA1153(¶15), JA1156(¶21-22), certification was not "sua sponte." The district court's certification of the liability class was not an abuse of discretion and must be affirmed.

**E. Certification of a Liability Class Did Not Violate Defendants' Rights Under Rule 7 or the Due Process Clause**

Defendants' arguments regarding Rule 7 and the Due Process Clause (OB78-83) also fail. None of the cases Defendants cite involve the application of Rule 7(b) or due process to class certification orders, rendering them inapplicable. OB80-82 (citing *Cleveland Bd. of Educ.*, 470 U.S. 532, 533 (1985) (due process for the property interest of federal employment); *Registration Control Sys., Inc.*, 922 F.2d 805, 807 (Fed. Cir. 1990) (discussing Rule 7(b) in the context of a motion for new trial); *Calderon*, 181 F.3d 1180, 1186 (10th Cir. 1999) (discussing Rule 7(b) in

---

extent defendants caused contamination of the area in question) in a case for allegations that defendant leaked chemicals into plaintiffs' soil and groundwater); *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1196-98 (6th Cir. 1988) (affirming certification of a Rule 23(b)(3) class to determine liability in a case for allegations of leaked chemicals and contamination of local water supply by residents who lived or owned property near defendant's landfill); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 388-389 (D. Colo. Oct. 8, 1993) (certifying a Rule 23(b)(3) class to determine common questions of liability in case alleging negligence, strict liability, private nuisance, and outrageous conduct for the release of hazardous radioactive and nonradioactive materials).

the context of a motion for leave to amend a complaint); *In re Long Island Properties*, 125 F.2d 206, 207-08 (2d Cir. 1942) (discussing lack of notice to interested creditors in bankruptcy proceeding)). Arguments presented in "skeletal form, without citation to any pertinent authority" are not considered on appeal. *Muñiz v. Rovira*, 373 F.3d 1, 8 (1st Cir. 2004).

Indeed, Defendants had every opportunity to be heard on why liability could not be certified on a class basis. Defendants knew well that Plaintiffs sought certification as to Defendants' liability. *See*, *e.g.*, JA1150(¶8) ("Here, issues on the elements of liability and the common law behind them, all have common answers for all class members. The questions of [what conduct caused harm], what harm was caused, what was the mechanism of how that harm was caused, and the foreseeability of that harm have common answers based on evidence common to all class members. There is no issue relating to Defendants' liability which is not common to all members of the Class."), JA1153(¶15), JA1156(¶21-22). Plaintiffs presented the evidentiary and legal basis for why issues of liability are common and predominated. *See*, *e.g.*, A5-10, A13-19. JA1153(¶15), JA1156(¶21-22), JA1200-03, JA1290-92. Defendants had the opportunity to respond. *See*, *e.g.*, SA1695 (arguing that the district

court could not "decide the issue of liability without individual, context-specific determinations about the defendant's state of mind"), SA1706-1710, JA4782-86, JA6276-6277, JA6421, JA6432. Defendants' attempt at a second bite at the apple—claiming violations of their rights—must be rejected outright.

Rule 23 imposes upon a district court the duty to craft and modify classes and class definitions as necessitated by the circumstances of the case. Further, it is black letter law that a district court may certify an issues class *sua sponte*; a formal motion is not necessary.[9]

There is simply no Rule 7 or due process issue in this case.

---

[9] *See* JA6613 (citing *In re Flint Water Cases*, 558 F.Supp.3d 459, 489 (E.D. Mich. 2021) (recognizing court's "obligation to create a new [class] definition *sua sponte* if the parties' own proposals are not adequate or accurate"); *Jenkins v. United Gas Corp.*, 400 F.2d 28, 35 (5th Cir. 1968) ("the Court under F. R. Civ. P. 23 has the duty, and ample powers, both in the conduct of the trial and relief granted to treat common things in common… ."); *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 478 (N.D. Ill. 1992) ("Rule 23(c)(4)(A) authorizes the bringing or maintenance of a class action with respect to particular issues in a case. … a court may also choose to take this step sua sponte"); *In re Copley Pharm., Inc.*, 158 F.R.D. 485, 491 (D. Wyo. 1994) ("… the Court must look to its authority under Rule 23(c)(4)(A) to grant class certification for particular issues, which the Court may do sua sponte.")).

**F.** **Bifurcation Creates No Violation of Defendants' Seventh Amendment Rights**

There is no rule against bifurcating liability claims and damages with class certification as Defendants claim. OB59. "[I]f done properly, bifurcation will not raise any constitutional issues." *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 n. 6 (6th Cir. 2004). Leading class action treatises agree. *See, e.g.,* 2 *Newberg and Rubenstein on Class Actions* § 4:91 (6th ed. 2010) (explaining that "the Seventh Amendment does not seem to pose a significant obstacle to the use of issue classes, even in the mass tort context" with "the myriad case management tools at trial courts' disposal"); *Manual for Complex Litigation (Fourth)* § 22.755 (2004) (same); *see also In re Prograf*, 2014 WL 4745954 at *4 (rejecting contention that liability and damages were so intertwined that bifurcation in antitrust class action would violate Seventh Amendment); *cf. Aetna Casualty Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1567-68 (1st Cir. 1994) (approving bifurcation of liability and damages).

Courts have repeatedly held that class bifurcation of liability and damages does not violate the Seventh Amendment. *See, e.g., In re Flint Water Cases*, 558 F.Supp.3d at 521-22; *Navelski*, 261 F.Supp.3d at 1219;

*McHugh v. Madison-Kipp Corp.*, No. 11-CV-724-BBC, 2012 WL 12996281, at *2 (W.D. Wis. May 3, 2012).

In *Navelski*, the court explained that the issues of causation and damages were not so "interwoven" because the liability jury needed only to determine whether the flooding of the class members' properties was caused by defendant's failure to maintain its dam, and the "liability jury's factual finding with respect to causation will become the law of the case. . ." *Navelski*, 261 F.Supp.3d at 1219 (citing *Parks v. Poindexter*, 723 F.2d 840, 844 (11th Cir. 1984)). "Because the damages juries will not need to reexamine the conclusions of the liability jury, the Seventh Amendment will not be violated by bifurcation of causation and damages in this case." *Id.*

A determination here that Defendants were negligent in releasing toxic PFOA from its facility, or that the PFOA they released trespassed on class properties, or that Defendants negligently failed to warn of their toxic emissions, will not have to be reexamined by a jury determining damages. Even if alternative sources were an issue (which the district court concluded that Defendants did not prove (A31-32, n. 92; A44-46)), damage juries would not have to reexamine the question of whether

Saint-Gobain was one cause. *See* N.H. Civil Jury Instructions, 6.1 (2024) ("you need not find that the defendant's conduct was the sole cause of the injury. You need only find that it was a substantial factor in bringing about the injury, even though other factors may also have contributed to cause the injury.")

The cases that Defendants cite are not to the contrary, as they relate to instances in which subsequent juries re-examined issues from a previous trial or follow on trials would require such re-exmination. OB59-63 (*citing Blyden*, 186 F.3d at 268-269; *Rhone-Poulenc*, 51 F.3d at 1303; *Gasoline Prod. Co.*, 283 U.S. at 496; *Franchi Const. Co.*, 580 F.2d at 8; *Jacks*, 118 F.4th at 899; *Ford*, 115 F.4th at 860-61; *D.C.*, 783 F. App'x at 767; *Clark*, 256 F. App'x at 821; *Tarrify*, 37 F.4th at 1106-07. Here, unlike *Tarrify*, controlling core issues as to Defendants' liability are susceptible to class wide proof.

All of these are case-specific determinations as the district court made here. And in *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 232-234 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011), the court held the fact of damages and the amount of damages, not at issue here, prevented a finding of predominance. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 751

(5th Cir. 1996) focused on a second trial of comparative negligence of nicotine addicted smokers; no such issue exists here (and Defendants have not raised such).

The district court clearly described what issues will be tried by the first jury, and those tried by the second. A32. The court also addressed the Seventh Amendment issues. A35. Here, Defendants have made no showing that the issue of whether Saint-Gobain caused contamination throughout the class areas would have to be reconsidered by a second jury deciding the proportion of Saint-Gobain's contamination to a now wholly speculative other source of contamination in localized areas of the class. A32. The court is fully capable of ensuring that the same issue is not tried twice, including by requiring specific jury instructions, and the issue is not even ripe because there is no proof that there is any threat of the court doing so. *See* 2 *Newberg and Rubenstein on Class Actions* § 4:80 (6th ed.) (the use of special verdict forms can provide the specificity necessary for instructing a second jury as to the aspects of the litigation previously resolved).

The district court's certification order, and its FRE 702 Order, demonstrate that it is fully aware of what issues should be tried as to liability to ensure compliance with the Seventh Amendment.

## II. THE RULE 23(c)(4) ISSUE THAT DEFENDANTS CLAIM JUSTIFIES REVIEW BY THIS COURT DOES NOT EXIST

Because the district court properly analyzed Plaintiffs' trespass, negligence, negligent failure to warn claims for certification under Rule 23(b)(3), and appropriately exercised its broad discretion to certify a liability class with respect to those claims, Defendants resort to manufacturing a non-existent issue for appellate review: whether the district court's certification order runs afoul of Rule 23(c)(4).  OB 30-45. This Court does not have to address this manufactured Rule 23(c)(4) issue because this case was not certified under Rule 23(c)(4).  Even if it were, the court's certification order nonetheless complies with Rule 23(c)(4), does not violate Defendants' rights, and must be upheld.

As detailed above, the district court did not "evade" application of Rule 23(b)(3) but directly applied it.  A27-32, 34-48.  Defendants admit that the court found that the liability class satisfied Rule 23(b)(3) requirements.  OB22.  There is no "expansive interpretation" or "sweeping application" of Rule 23(c)(4), but rather the district court's

application of Rule 23(b)(3) standards to the liability issues certified. The district court properly certified a Rule 23(b)(3)-qualifying liability class without bypassing any prerequisite. Defendants absolutely fail their burden to demonstrate that the court abused its discretion in certifying liability issues for class treatment.

Defendants and *Amici* cite *Castano* for the proposition that the cause of action as a whole must satisfy the predominance requirement of Rule 23(b)(3). *Castano v. Am. Tobacco Co.*, 84 F3d 734, 745, n 21 (5th Cir 1996).[10] They fail to mention that the Fifth Circuit subsequently rejected that view in *In re Deepwater Horizon*, 739 F.3d 790, 816-18 (5th Cir. 2014). Indeed, no other circuits follow such an interpretation, likely because it would eviscerate Rule 23(c)(4) and violate basic tenets of rule and statutory construction. *See Amici* Brief of R.H.Klonoff, E.J.Cabraser, and S.Issacharoff as to Rule 23(c)(4) Standard, *Harris v. Medical Transportation Management, Inc.*, No. 22-7033, 2022 WL 3041189 (D.C. Cir. Aug. 1, 2022); *Martin*, 896 F.3d at 412-13 (rejecting that predominance must first be satisfied as to the cause of action as a

---

[10] *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 422 (5th Cir. 1998) relies on *Castano*.

whole).  And Rule 23 clearly has not been amended to eliminate liability classes post-*Dukes*.

## III.  THE DISTRICT COURT SATISFIED RULE 23(c)(1)(B)'S TEXT AND PURPOSE

Defendants attempt to create an issue where one does not exist by claiming that the district court insufficiently satisfied Rule 23(c)(1)(B).  OB74-78.  Defendants not only ignore Rule 23(c)(1)(B)'s purpose (i.e., to primarily aid an appellate court in later reviewing whether the class certification order was proper); *see*, *e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40 (1st Cir. 2009); and 3 *Newberg and Rubenstein on Class Actions* § 7:26 (6th ed.), but they also attempt to improperly amend Rule 23(c)(1)(B).

Before subsection Rule 23(c)(1)(B)'s addition to Rule 23, the Standing Committee explained that "[s]uch a requirement facilitates application of the interlocutory-appeal provision of Rule 23(f). . ." Report of Standing Committee on Rules of Practice and Procedure at 11 (Sept. 2002).  The Standing Committee plainly sought to facilitate appellate review of certification orders with subsection (c)(1)(B).  It is not a matter of protecting Defendants' rights.

Here, the court's order satisfied Rule 23(c)(1)(B)'s text and purpose. The district court clearly identified the issues to be addressed on a class basis and so at trial. The court certified the class as to liability issues under the trespass, negligence, and negligent failure to warn claims. A2, 54. A defendant is liable for trespass, if the defendant intentionally enters land in the possession of the other, or causes a thing or a third person to do so. *See* A36 (citing *Case v. St. Mary's Bank*, 164 N.H. 649, 658 (2013)). The tortfeasor must have known that his conduct was substantially certain to result in injury. *See* A36 (citing *Thompson v. Forest*, 136 N.H. 215, 220 (1992)). "To prove its negligence and negligent failure to warn claims, the plaintiffs must 'establish that the defendant owed a duty to the plaintiff, breached that duty, and that the breach proximately caused the claimed injury.'" A41 (quoting *Est. of Joshua T.*, 150 N.H. at 407). The conduct must be in breach of an existing duty and create a foreseeable risk of harm to someone to whom that duty is owed. A41 (citing *Thibeault v. Campbell*, 136 N.H. 698, 701 (1993)). The court correctly understood the elements of these claims and certified the claims and their elements for trial.

The district court identified the issues that would be presented at trial under these theories: Defendants' actions in emitting toxic chemicals and their subsequent efforts to investigate, mitigate, and warn the potentially affected population of the emissions; the hazardous nature of the chemicals emitted; and the geographical scope and foreseeability of groundwater contamination. A2. The court clearly identified these common elements to be tried on a class-wide basis. A28, 32. It identified that the issue of whether Saint-Gobain caused the entry of contaminants onto their properties to be tried. *Id.* It identified that Saint-Gobain's actions surrounding the emission of PFOA and subsequent mitigation efforts, as well as the resulting contamination of the plaintiffs' groundwater to be tried, recognizing that they are, central to the duty, breach, and causation elements of the negligence claims. A28.

The court clearly indicated that that Saint-Gobain's intent as an element of trespass was common and would be tried, including Saint-Gobain's knowledge of (1) the occurrence and volume of PFOA emissions from its facility; (2) the toxic nature of PFOA; and (3) the science showing

that PFOA travels from the air, to the land, and then to the groundwater on an area-wide basis.  A36, 38.

The court clearly indicated that the issue of whether Saint-Gobain owes a duty to class members and breached that duty of care would be tried.  A41.  Particularly the court determined that the foreseeability and magnitude of risk of harm to the class resulting from Saint-Gobain's emissions would be tried.  A42.  This included class-wide proof regarding Saint-Gobain's knowledge of its own emissions, the toxicity of PFOA, and the pathways through which those emissions cause groundwater contamination through a given area.  *Id.*  The evidence at trial would include common evidence regarding the volume of PFOA emissions from the facility, and, again, the harmful effects of PFOA and the extent to which it is likely to travel based on area-wide modeling.  A42.  Also presented at trial will be common evidence of Saint-Gobain's actions with respect to emissions, mitigation, and warning the public and geographic scope of contamination.  A42-43.  The court also clearly indicated that causation would be tried through evidence that Saint-Gobain's emissions contributed to groundwater contamination where present across the

class areas.  A43.  The court fully identified the defenses that Defendants may present as to liability.  A43-47.

The district court clearly identified the claims, issues, and defenses, the elements of Plaintiffs' claims for trespass, negligence and negligent failure to warn, including causation, that would be determined at trial. Moreover, because the district court clearly defined the class certified and identified the class claims, issues, or defenses in the certification order, this will ultimately facilitate this Court's review on appeal.  That is enough to satisfy Rule 23(c)(1)(B).  Thus, Defendants' attempt to impose requirements on the district court, beyond those required by Rule 23(c)(1)(B) by arguing that the court did not define the scope of and plan for bifurcated class proceedings, should be rejected.

Even if the Court were to interpret Rule 23(c)(1)(B) as requiring a district court to also define the scope of and plan for bifurcated class proceedings, which it should not, the order easily meets the *Wachtel ex rel. Jesse*, 453 F.3d 179, 184-85 (3d Cir. 2006) standard.  In defining the parameters of the class, the district court explained: "The proposed class is ascertainable, as membership depends on three objective criteria— property ownership, on or after a specific date (March 4, 2016), and

within defined geographical boundaries." A25; *see also* PSA1-6. For the second *Wachtel* prong, as explained above, the order identifies the claims to be tried. Accordingly, Defendants' arguments to the contrary are without merit.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's class certification order and hold that there was no abuse of discretion in the district court's decision to certify a liability class with respect to the trespass, negligence, and negligent failure to warn claims, and that the district court satisfied Rule 23(c)(1)(B) in entering the certification order.

Dated: March 10, 2025.        Respectfully submitted,

*/s/ Kevin S. Hannon*
Kevin S. Hannon (1177677)
SINGLETON SCHREIBER, LLP
1641 N. Downing Street
Denver, CO 80218
(720) 704-6028
khannon@singletonschreiber.com

*/s/ John A. Yanchunis*
John A. Yanchunis (1133910)
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505
jyanchunis@forthepeople.com

*/s/ Morgan A. Hollis*
Morgan A. Hollis (1041492)
GOTTESMAN & HOLLIS P.A.
39 East Pearl Street
Nashua, NH 03060
(603) 889-5959
mhollis@nh-lawyers.com

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,983 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century font.

Dated: March 10, 2025.

*/s/ Kevin S. Hannon*
Kevin S. Hannon

*Attorney for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, a true and correct copy of the foregoing Brief was filed electronically with the Clerk's Office of the United States Court of Appeals for the First Circuit and served on all parties, using the CM/ECF system.

/s/ Kevin S. Hannon
Kevin S. Hannon

*Attorney for Plaintiffs-Appellees*

# ADDENDUM

## Table of Contents

| ECF No. | Description | PSA Page |
|---------|-------------|----------|
| 255-2 | Exhibit 1 to ECF No. 438, Order on Class Certification: Map of the Private Well Class Geographic Area | PSA1 |
| 255-3 | Exhibit 2 to ECF No. 438, Order on Class Certification: Map of the MVDWW Class Geographic Area | PSA5 |

# APPENDIX A



Figure 1

# Residential Water Well Summary

Public Database Geographic Search

Gottesman & Hollis, P.A.

Private Well Class Geographic Area
Merrimack, New Hampshire and Vicinity

| | |
|---|---|
| Drawn By: | H. Pother |
| Designed By: | L. Corenthal |
| Reviewed By: | C. Head |
| Project No: | 4090.00 |
| Date: | June 2018 |

### Figure Narrative

This figure depicts residential parcels with wells or inferred wells, and parcels in Merrimack located on a public water supply line based on publicly available information.

This compilation is limited based on the accuracy and precision of the input datasets; an independent review of the input datasets was not performed. Because the NHDES water well inventory does not include wells installed prior to 1984, older wells have not been identified, and it is possible that wells are installed on residential parcels that are colocated with public water distribution lines. This compilation focused on parcels with residential buildings based on the state land use code; non-residential wells (e.g. commercial or industrial wells, monitoring wells) were not included. In short, this compilation is based on the best, but imperfect available data, and may not include all water wells in the search area.

### Notes

1. Parcel information, which includes street addresses and SLUCs from the New Hampshire Department of Revenue Administration, town borders and roads were obtained from the New Hampshire's statewide Geographic Information System Clearing House (NH GRANIT).

2. Water wells were obtained from the New Hampshire Water Well Inventory via NHDES OneStop data mapper and NHDES OneStop database on April 27, 2018. Water wells from the OneStop database were geocoded by Sanborn Head using the U.S. Census Bureau Census Geocoder. Inferred wells were well were identified by Sanborn Head via a windshield survey on May 1, 2018.

3. Public water distribution lines were obtained from the NHDES OneStop DataMapper on April 16, 2018 and compared to the PFAS investigation Updated January 9, 2018" PDF by NHDES (refer to text for webpage).

### Legend

Private Well Class Geographic Area

■ Residential Building, Confirmed Well on Property

■ Residential Building, Inferred Well on Property

▢ Residential Building, Served by Water Line in Merrimack

▢ Residential / Non-Residential Other

▢ Town Boundaries

SANBORN HEAD

Miles
0.5  0.25  0  0.5  1

© 2018 SANBORN, HEAD & ASSOCIATES, INC.

PSA2



Figure 1A

**Residential Water Well Summary**
**Northern Area**

Public Database Geographic Search

Gottesman & Hollis, P.A.

Private Well Class Geographic Area
Merrimack, New Hampshire and Vicinity

| | |
|---|---|
| Drawn By: | H. Pother |
| Designed By: | L. Corenthal |
| Reviewed By: | C. Head |
| Project No: | 4090.00 |
| Date: | June 2018 |

**Figure Narrative**

This figure depicts residential parcels with wells or inferred wells, and parcels in Merrimack located on a public water supply line based on publicly available information.

This compilation is limited based on the accuracy and precision of the input datasets; an independent review of the input datasets was not performed. Because the NHDES water well inventory does not include wells installed prior to 1984, older wells have not been identified, and it is possible that residential parcels indicated as residential parcels that are colocated with public water distribution lines. This compilation focused on parcels with residential buildings based on the state land use code; non-residential wells (e.g. commercial or industrial wells, monitoring wells) were not included. In short, this compilation is based on the best, but imperfect available data, and may not include all water wells in the search area.

**Notes**

1. Parcel information, which includes street addresses and SLUCs from the New Hampshire Department of Revenue Administration, town borders and roads were obtained from the New Hampshire's Statewide Geographic Information System Clearing House (NH GRANIT).

2. Water wells obtained from the New Hampshire Water Well Inventory via NHDES OneStop data mapper and NHDES OneStop database on April 17, 2018. Water wells from the OneStop database were geocoded by Sanborn Head using the U.S. Census Bureau Census Geocoder. In addition, some wells were identified by Sanborn Head via a windshield survey on May 1, 2018.

3. Public water distribution lines were obtained from the NHDES OneStop DataMapper on April 16, 2018 and compared to the "PFAS Investigation Updated January 9, 2018" PDF by NHDES (refer to text for webpage).

**Legend**

Private Well Class Geographic Area

Residential Building,
Confirmed Well on Property

Residential Building,
Inferred Well on Property

Residential Building,
Served by Water Line in Merrimack

Residential / Non-Residential
Other

Town Boundaries

SANBORN HEAD

0.25  0.125  0  0.25  0.5
Miles

PSA3



Figure 1B

**Residential Water Well Summary**
**Southern Area**

Public Database Geographic Search

Gottesman & Hollis, P.A.

Private Well Class Geographic Area
Merrimack, New Hampshire and Vicinity

Drawn By: H. Pother
Designed By: L. Corenthal
Reviewed By: C. Head
Project No: 4050.00
Date: June 2018

## Figure Narrative

This figure depicts residential parcels with wells or inferred wells, and parcels in Merrimack located on a public water supply line based on publicly available information.

This compilation is limited based on the accuracy and precision of the input datasets; an independent review of the input datasets was not performed. Because the NHDES water well inventory does not include wells installed prior to 1984, older wells have not been identified, and it is possible that there are wells installed on residential parcels that are colocated with public water distribution lines. This compilation focused on parcels with residential buildings based on the state land use code; non-residential wells (e.g. commercial or industrial wells, monitoring wells) were not included. In short, this compilation is based on the best, but imperfect available data, and may not include all water wells in the search area.

## Notes

1. Parcel information, which includes street addresses and SLUCs from the New Hampshire Department of Revenue Administration, town borders and roads were obtained from the New Hampshire's Statewide Geographic Information System Clearing House (NH GRANIT).

2. Water wells obtained from the New Hampshire Water Well Inventory via NHDES OneStop data mapper and NHDES OneStop database on April 17, 2018. Water wells from the OneStop database were geocoded by Sanborn Head using the U.S. Census Bureau Census Geocoder. In addition, some wells were identified by Sanborn Head via a windshield survey on May 1, 2018.

3. Public water distribution lines were obtained from the NHDES OneStop DataMapper on April 16, 2018 and compared to the "PFAS Investigation Updated: January 9, 2018" PDF by NHDES (refer to text for webpage).

SANBORN ||||| HEAD

0.25 0.125 0 0.25 0.5
Miles

## Legend

**Private Well Class Geographic Area**

Residential Building, Confirmed Well on Property

Residential Building, Inferred Well on Property

Residential Building, Served by Water Line in Merrimack

Residential / Non-Residential Other

Town Boundaries

Londonderry

Litchfield

Merrimack

N W E S

PSA4

© 2018 SANBORN, HEAD & ASSOCIATES, INC.

Last Edited By: lpsjsiter

P:\PROD\4050\4050_DG\Arbela PfileG\5RisingSegments2\100N_PfA34.mxd

# APPENDIX B



**LEGEND**
- WATER MAIN - SIZE UNKNOWN
- WATER MAIN - 2", 4"
- WATER MAIN - 6"
- WATER MAIN - 8"
- WATER MAIN - 10"
- WATER MAIN - 12"
- WATER MAIN - 16"
- WATER MAIN - 20"
- WATER MAIN - 24"
- PRESSURE ZONE BOUNDARY
- WELL
- TANK

**WATER MAIN LENGTH BY DIAMETER**

| DIAMETER | LENGTH (FEET) | LENGTH (MILES) | PERCENT |
|---|---|---|---|
| 2" | 22,601 | 4.3 | 2.6% |
| 4" | 5,608 | 1.1 | 0.6% |
| 6" | 122,513 | 23.2 | 14.0% |
| 8" | 397,966 | 75.4 | 45.4% |
| 10" | 17,709 | 3.4 | 2.0% |
| 12" | 235,873 | 44.7 | 26.9% |
| 16" | 51,135 | 9.7 | 5.8% |
| 20" | 18,944 | 3.6 | 2.2% |
| 24" | 61 | 0.01 | 0.0% |
| UNKNOWN | 4,550 | 0.9 | 0.5% |
| **TOTAL** | **876,959** | **166.1** | **-** |

NOTES:
1. BASE PLAN AND WATER MAIN INFORMATION COMPILED FROM GIS SHAPE FILES PROVIDED BY NASHUA REGIONAL PLANNING COMMISSION (NRPC) 3/27/2012. WATER MAIN INFORMATION UPDATED APRIL 2014, BASED ON INFORMATION PROVIDED BY MERRIMACK VILLAGE DISTRICT.
2. BASE PLAN DATUM IS NEW HAMPSHIRE STATE PLANE NAD 83 US FOOT.

| DATE | | | EXISTING DISTRIBUTION MAINS | FIG. |
|---|---|---|---|---|
| 11/12/14 | **UNDERWOOD** engineers | | —SIZE— | 1 |
| PROJECT | | | MERRIMACK VILLAGE DISTRICT | |
| 1786 | 25 Vaughan Mall, Portsmouth, N.H. 03801 Tel. 603-436-6192  Fax. 603-431-4733 | | MERRIMACK, NEW HAMPSHIRE | **PSA6** |